**In the MATTER OF the WELFARE OF the CHILD OF: R.K., Parent.**

**A17-0497**

Supreme Court of Minnesota.

Filed: September 13, 2017

Kenneth R. White, Law Office of Kenneth R. White, P.C., Mankato, Minnesota, for appellant L.A.

Patrick R. McDermott, Blue Earth County Attorney, Mark A. Lindahl, Assistant County Attorney, Mankato, Minnesota, for respondent Blue Earth County Human Services.

## OPINION

CHUTICH, Justice.

This appeal presents the question of how to calculate the filing deadline for an appeal in a juvenile protection proceeding when a party is served with notice of the filing of the district court's order by two different forms of service that result in two different deadlines for the filing of a notice of appeal. Based on the plain language of the relevant rules, we conclude that the deadline for this appeal is based on the district court's service of notice by mail. Because the appeal was filed by that deadline, we issued an order on June 28,

2017, vacating the court of appeals' order dismissing the appeal as untimely, with this opinion to follow. This opinion confirms our order.[1]

## FACTS

On August 4, 2016, Blue Earth County Human Services filed a petition, alleging that the child of appellant L.A. was in need of protection or services (CHIPS).[2] L.A. filed an application with the district court requesting appointed counsel to represent him, and on August 17, 2016, the district court appointed an attorney to represent him in the CHIPS proceeding. *See* Minn. R. Juv. Prot. P. 25.02, subd. 2 (requiring appointment of counsel for a parent "as soon as practicable after the request is made"). Thereafter, the district court's orders from the CHIPS proceedings that were filed between August and December 2016 were served, separately, on both L.A. and his appointed attorney.[3]

On November 16, 2016, Blue Earth County Human Services filed a petition to terminate L.A.'s parental rights to the child. The County personally served L.A. with a copy of the petition on November 18, 2016, when he appeared, along with his appointed attorney, for a previously scheduled hearing in the CHIPS proceeding. The attorney appointed to represent L.A. in the CHIPS proceeding continued to represent him in the termination proceeding.

The trial on the County's petition was held on January 19, 2017; both L.A. and his appointed attorney were present. In an order filed on March 2, 2017, the district court granted the County's petition and terminated L.A.'s parental rights. On that same date, the district court administrator *electronically* served L.A.'s attorney with notice of the filing of the district court's order. L.A. was separately served on the same date, by *mail*, with the same notice.[4] *See* Minn. R. Juv. Prot. P. 10.03, subd. 1 (requiring the court administrator to serve court orders "upon each party").

An appeal must be filed in a juvenile protection proceeding within 20 days after service of notice of the district court's order. Minn. R. Juv. Prot. P. 47.02, subd. 2 ("Any appeal shall be taken within twenty (20) days of the service of notice by the court administrator of the filing of the court's order."). On March 21, 2017, L.A. filed a request with the district court for appointment of counsel for an appeal. *See* Minn. R. Juv. Prot. P. 25.02, subd. 2 (requiring appointment of appellate counsel within three days of the request). On March 24, 2017, the district court appointed a new attorney as L.A.'s appellate counsel, and on March 27, 2017, L.A., through his appellate attorney, filed a notice of appeal with the court of appeals.

The next day, the court of appeals directed the parties to address whether the

1. To ensure that permanency for the child was not unnecessarily delayed, we filed an order shortly after oral argument was held, vacating the court of appeals' order that dismissed the appeal and remanding to the court of appeals with instructions to reinstate the appeal. *In re Welfare of Child of R.K.*, No. A17-0497, Order (Minn. filed June 28, 2017).

2. The child's mother, R.K., was also a party to the proceedings in the district court. R.K. voluntarily terminated her parental rights to the child and has not participated in this appeal. Only L.A., the child's father, is a party

to this appeal and will be discussed in this opinion.

3. In orders filed after an admit-or-deny hearing and review hearings on the County's CHIPS petition, the district court directed the court administrator to serve "a copy of [the] Order ... by U.S. mail ... upon the following persons," including the father's attorney and "[L.A.], Father."

4. The notice of filing of the order included a list of recipients shown as "C:" including "[L.A.], Father."

appeal was timely in light of the date and method of service of the district court's notice.[5] L.A., in response, argued in part that the appeal was timely because he was separately served with the district court's March 2 order by mail, in addition to the electronic service on his appointed trial counsel. Thus, he contended, the appeal was timely based on the three additional days allowed for mail service. *See* Minn. R. Juv. Prot. P. 4.02 (stating that "three (3) days shall be added to the prescribed period" when "service of a notice or other document" is made by mail). L.A. also argued that the appeal period in a juvenile protection proceeding should be tolled once an application for appointment of appellate counsel is filed, to allow time to complete the attorney-appointment process.

The court of appeals dismissed L.A.'s appeal as untimely, concluding that "the appeal period expired on March 22, 2017," five days before L.A.'s notice of appeal was filed. *In re Welfare of Child of R.K.*, No. A17-0497, Order at 2 (Minn. App. filed Apr. 18, 2017). The court also concluded that the appeal period "was not stayed by [L.A.'s] motion for appointment of appellate counsel." *Id.*

We granted L.A.'s petition for review, directing the parties to address in their briefs "the timeliness of the appeal in light of the methods of service and the procedural history of the case." *In re Welfare of Child of R.K.*, No. A17-0497, Order (Minn. filed May 18, 2017).

## ANALYSIS

■ This appeal requires us to interpret several provisions of the Rules of Juvenile Protection Procedure. "We interpret procedural rules de novo." *In re Welfare of*

*S.M.E.*, 725 N.W.2d 740, 742 (Minn. 2007). We begin with a review of the relevant rules.

A district court's order terminating parental rights must be filed "with the court administrator," Minn. R. Juv. Prot. P. 39.05, subd. 3(a), who must serve the order "upon each party" by "U.S. mail, through the E-Filing System, by e-mail or other electronic means agreed upon in writing, . . . or as otherwise directed by the court," Minn. R. Juv. Prot. P. 10.03, subd. 1. "If a party is represented by counsel, . . . service shall be upon counsel," Minn. R. Juv. Prot. P. 10.03, subd. 1, which is deemed to be service on the party, Minn. R. Juv. Prot. P. 31.04 (stating that "service upon counsel for a party . . . shall be deemed service upon the party"). Service made through the district courts' eFile System "is complete upon completion of the electronic transmission of the document" to the system. Minn. Gen. R. Prac. 14.03(e); *see also* Minn. R. Juv. Prot. P. 31.06 (relying on Minn. Gen. R. Prac. 14.03(e) to define completion of electronic service). Service made "by U.S. mail is complete upon mailing," Minn. R. Juv. Prot. P. 31.06, but three additional days are added to the 20-day appeal period when service is completed by mail, *see* Minn. R. Juv. Prot. P. 4.02 ("Whenever a person has the right . . . to do an act within a prescribed period after the service of a notice . . . and the notice . . . is served by U.S. mail, three (3) days shall be added to the prescribed period.").

L.A. asks us to allow his appeal to proceed as an exercise of our inherent authority based on the "peculiar facts" and confusing "procedural steps"—specifically, the use of two forms of service on the same

---

**5.** Blue Earth County did not respond to the court of appeals' order requesting the parties to address the timeliness of L.A.'s appeal.

day. Blue Earth County agrees that L.A.'s appeal is timely if the March 2 mail service controls. But, because the electronic service on L.A.'s appointed trial attorney was deemed to be service on L.A., the County argues that he cannot rely on the separate mail service to extend the appeal period. Thus, the County contends, the court of appeals was required to dismiss the appeal as untimely.

■ An appeal from an order that terminates parental rights must be filed within 20 days "of the service of notice by the court administrator of the filing of the court's order." Minn. R. Juv. Prot. P. 47.02, subd. 2. It is undisputed that the district court's March 2 order was served on L.A. electronically on March 2, by the service made on his attorney through the eFile System. It is also undisputed that the district court's March 2 order was served on L.A. by mail, also on March 2. Thus, the question is, when did L.A.'s appeal period expire: 20 days after the electronic service on his attorney or 23 days after the mail service on L.A.? Answering this question determines whether L.A.'s appeal was timely. If electronic service controls, the appeal was untimely; if mail service controls, the appeal was timely.

■ When interpreting rules of procedure, we look "first to the plain language of the rule and its purpose." *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 601 (Minn. 2014). "Where the language is plain and unambiguous, that plain language must be followed." *Id.* Here, Rule 10.03 allows the court administrator to use any of several permitted methods to serve court orders—mail, personal, or electronic—but does not require the court administrator to use one form or another unless agreed to by the parties or "otherwise directed by the court." *See* Minn. R. Juv. Prot. P. 10.03, subd. 1; *see also* Minn. Gen. R. Prac. 14.03(f) (allowing the district court to

"transmit notices outside the E-Filing System as provided in . . . other applicable rules"). In contrast to the CHIPS proceedings, during which the district court directed the court administrator to serve notices of orders by mail, the district court did not direct that the March 2 order be served by any particular method. Finally, although Rule 47.02 allows an appeal to be filed within 20 days "of the service of notice by the court administrator of the filing of the court's order," the rule is silent about which method of service controls when the court administrator serves a party more than once with the same notice of filing. Minn. R. Juv. Prot. P. 47.02, subd. 2.

Read together, nothing in the plain language of these rules required the court administrator to use only one method of service, and nothing in the plain language of the rules directs that one method of service controls over another when a party is served with the same notice or order by two methods. *See, e.g., Gams v. Houghton*, 884 N.W.2d 611, 616 (Minn. 2016) (explaining that the plain language of Minn. R. Civ. P. 60.02 does not expressly exclude dismissals under Minn. R. Civ. P. 5.04(a) from the scope of motions that seek relief from judgment, and therefore, "Rule 60.02 applies to Rule 5.04(a) dismissals"); *see also Mingen v. Mingen*, 679 N.W.2d 724, 727 (Minn. 2004) (explaining that we "do not read" the rules "in isolation," but instead "read them in light of one another"). In other words, the plain language of the rules directed L.A. to calculate the appeal deadline based on "service of notice by the court administrator," Minn. R. Juv. Prot. P. 47.02, subd. 2, which he did, using the appeal period that governs one of the forms of service that the court administrator was permitted to use: mail service.

■ Our plain-language interpretation is sufficient to resolve the case. And our interpretation is also consistent with our

view that procedural rules should be construed to preserve the right to an appeal. *See In re Welfare of S.M.E.*, 725 N.W.2d at 742-43 (interpreting the procedural rules in a juvenile-delinquency case "to preserve the right to appeal, simplify practice, and lessen confusion," and noting that re-opening the record in the district court during the appeal period placed the juvenile "in the very predicament" the appellate rules are intended to eliminate); *Commandeur LLC v. Howard Hartry, Inc.*, 724 N.W.2d 508, 511-12 (Minn. 2006) (construing "legal holiday" to include Columbus Day even though the judicial branch does not recognize that holiday, based in part on a "'preference that actions be determined on the merits'" (quoting *Patterson v. Wu Family Corp.*, 608 N.W.2d 863, 867 (Minn. 2000))); *Tombs v. Ashworth*, 255 Minn. 55, 95 N.W.2d 423, 425 (1959) (noting that in general "'limitations upon the time for taking an appeal are to be liberally construed to avoid a forfeiture of the right of appeal'" (quoting *Weckerling v. McNiven Land Co.*, 231 Minn. 167, 42 N.W.2d 701, 704 (1950))).

Of course, the plain language of Rule 10.03 required the court administrator to serve L.A.'s attorney, and Rule 31.04 designates that service as, effectively, service on L.A. himself. *See* Minn. R. Juv. Prot. P. 10.03, subd. 1; 31.04. But we cannot conclude that the electronic service on L.A.'s attorney makes the mail service on L.A. irrelevant simply because L.A. was *also* served electronically. The language of Rule 31.04 simply states what is undisputed here: L.A. was served electronically with notice of the court's order when the court administrator served his appointed trial counsel. This rule does not change the other undisputed fact: L.A. was also served by mail with the same notice. The deemed electronic service on L.A. also does not answer the question that this appeal poses: what is the deadline for L.A.'s appeal given the two different forms of service here? The only answer that is consistent with the plain language of the rules is that L.A. can rely on either form of service to calculate the appeal period.[6] *See, e.g., Commandeur LLC*, 724 N.W.2d at 511 (rejecting a narrow interpretation of procedural rules that risked setting "a trap for the unwary").

We also note that our plain-language interpretation does not excuse an appeal that would otherwise be untimely because of *a party's* missteps. *See, e.g., Bjerga v. Maislin Transport & Carriers Ins. Co.*, 400 N.W.2d 99, 100 (Minn. 1987) (noting that an administrative panel provided the parties with "the wrong statute" and mis-

**6.** At oral argument, the County conceded that L.A.'s appointed trial attorney was discharged at some point before L.A. sought the appointment of appellate counsel or the appeal period had expired. No order in the district court record confirms the date on which the appointed trial attorney was discharged, perhaps because he was automatically discharged once proceedings in the district court were concluded. *See* Minn. R. Juv. Prot. P. 25.06(a) (explaining that appointed counsel continues to represent the party until the district court proceedings are "completed"). Although an attorney has an ethical obligation to communicate with a client regarding decisions necessary to protect the client's rights, *see* Minn. R. Prof. Conduct 1.4(a), we cannot conclude that a client should be bound by the form of service used to serve an attorney who no longer represents the client, particularly when, as here, the attorney and the client are each, separately, served with the same document. We also note that court administration regularly served L.A. by mail with notice of court orders filed over the course of the CHIPS and termination proceedings even after his attorney was appointed to represent him and even though the attorney was also served with that document. This practice gave L.A. little reason to rely on the service made on his appointed trial attorney.

leading information on filing an appeal, but the "deciding factor" in concluding that the appeal was untimely was that the party "mailed [the] notice of appeal to the wrong address so that there was no timely filing anywhere"). In the decision the dissent cites, *In re Welfare of J.R.*, the appeal was dismissed because the appellant failed to timely serve a party, the guardian ad litem, with the notice of appeal. 655 N.W.2d 1, 1-2 (Minn. 2003). Here, L.A.'s appeal is timely because he filed it within the time allowed by the form of service that the court administrator chose to use.[7] As the dissent concedes, the timing "problem" was caused by the court administrator's "practice," not by any party.

Nor do we significantly delay permanency by allowing L.A.'s timely appeal to proceed. The difference between the two appeal periods is just three days. An appeal necessarily takes time, but permitting a timely appeal to proceed does not, as the dissent contends, undermine the important objectives in juvenile protection matters.

We require an expeditious resolution of permanency because we will not allow children to linger in uncertainty. *See In re Welfare of J.R.*, 655 N.W.2d at 5 (explaining that "time for a child is different than time for adults," and "from a child's view, a delay is a delay regardless of the reason"). The "just, thorough, speedy, and efficient" resolution of permanency also requires that we "ensure due process for all persons involved in the proceedings." Minn. R. Juv. Prot. P. 1.02(f). Restricting L.A. to the shorter of the two appeal periods is consistent with our commitment to avoid delays in the resolution of these matters, *see In re Welfare of J.R.*, 655 N.W.2d at 5 (explaining our policy that juvenile protection matters "in particular need to be expeditiously handled"), but permitting L.A. to rely on the mail service to calculate his appeal deadline is consistent with the due process he is owed.[8] *See Santosky v. Kramer*, 455 U.S. 745, 753-54, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ("When the State moves to destroy weakened familial bonds, it must provide the parents with

7. In *Huntsman v. Huntsman*, the appellant was served with notice of the filing of an order by facsimile and on the same day was also served with notice by mail. 633 N.W.2d 852, 854 (Minn. 2001). In considering whether the appeal was properly taken from the judgment entered on the post-trial motions, we noted that the appellant "would have had an additional 3 days to file his notice of appeal *if it had only been mailed.*" *Id.* at 854 n.1 (emphasis added). We did not decide whether one form of service or the other was controlling because the appellant's "appeal from notice served by fax was still timely." *Id.; see State v. Hess*, 684 N.W.2d 414, 421 n.6 (Minn. 2004) ("Considerations made in a judicial opinion that are unnecessary to the decision in the case are dicta."); *State Bank of Rose Creek v. Commerce Comm'n*, 305 N.W.2d 794, 797 (Minn. 1981) (holding that the longer appeal period, from a judgment, controlled over the shorter appeal period in a certiorari proceeding when the two proceedings were consolidated in the district court and the cer-

tiorari proceeding "was not an independent proceeding").

8. As the dissent recognizes, this appeal results directly from the decision to use two different forms of service to serve one document on L.A. In 2009, we amended the rules to reduce the appeal period in juvenile protection cases from 30 days to 20 days. *Order Promulgating Amendments to the Rules of Juvenile Protection Procedure*, No. C1-01-927, at 118 (Minn. filed June 10, 2009). This change was recommended "to expedite the process so as to conform to federal standards" that govern permanency timelines and the "best practices" advanced by the American Bar Association and the National Council of Juvenile and Family Court Judges. *Report and Proposed Rules Amendments Submitted by Juvenile Protection Rules Committee to Minnesota Supreme Court*, No. C1-01-927, at 6-8 (filed Feb. 6, 2009). We encourage district courts to determine how these objectives are best met using the electronic tools available in the case management system.

fundamentally fair procedures.").[9]

Importantly, calculating L.A.'s appeal period based on the mail service does not extend the appeal period beyond what the rules permit and, therefore, does not undermine our commitment to expediting permanency decisions. Ultimately, L.A.'s appeal was timely filed because nothing in the plain language of the rules told him that he could not rely on the service upon him by mail when calculating the deadline for filing an appeal. We therefore conclude that his appeal must be reinstated.[10]

## CONCLUSION

For the foregoing reasons, we vacate the order of the court of appeals that dismissed the appeal and remand to the court of appeals with instructions to reinstate the appeal.

Vacated.

Dissenting, Gildea, C.J., McKeig, J.

## DISSENT

GILDEA, Chief Justice (dissenting).

I respectfully dissent. Almost 20 years ago, the Minnesota Judicial Branch adopted the Children's Justice Initiative, the goal of which is to ensure permanency for children in a fair and timely manner. *See* Minn. State Court Administrator's Office, *Minnesota Judges Juvenile Protection Benchbook* § 1.04 (2011). The Children's Justice Initiative directs us to look to the best interests of the child at every step in our process because "from a child's view, a delay is a delay regardless of the reason." *In re Welfare of J.R.*, 655 N.W.2d 1, 5 (Minn. 2003); *see* Minn. Judicial Council, Minnesota Judicial Branch Policy 601: Children's Justice Policy (2011) (stating that the policy of the Judicial Branch is to expedite juvenile protection cases "with the goal of serving the best interests of children"). This foundational goal is reflected in the purpose of our Rules of Juvenile Protection Procedure. Minn. R. Juv. Prot. P. 1.02 (noting that "[t]he purpose of these rules is to ... provide a just, thorough, speedy, and efficient" resolution, and "reduce unnecessary delays in court proceedings").

Today, the majority significantly undermines the goal of the Children's Justice Initiative. The district court terminated L.A.'s parental rights in March 2017, allowing permanency planning to be completed. Now, it is likely to be another year before the child knows where her permanent home will be. This delay is significant and it is inconsistent with the plain language of our rules.

With regard to the language of our rules, the majority attempts to ground its

9. Thus, the dissent's observation that the rules are for "child protection," not "parent protection," is pithy but incomplete. In describing their purpose, the Minnesota Rules of Juvenile Protection Procedure use not only the adjectives "speedy" and "efficient," but also "just" and "thorough." Minn. R. Juv. Prot. P. 1.02. The rules seek to ensure due process for all parties. Minn. R. Juv. Prot. P. 1.02 1999 advisory comm. cmt. (amended 2014).

10. Although our order granting review was limited in scope, L.A. asked us to adopt an equitable-tolling rule to accommodate the time needed to secure and appoint appellate counsel. In the alternative, he has asked that we find a due-process violation to the extent that indigent parents have less time to perfect an appeal in a juvenile protection matter when waiting for counsel to be appointed than does a parent who retains private counsel. We do not reach constitutional issues when an appeal can be resolved on other grounds. *State ex rel. Humphrey v. Philip Morris USA, Inc.*, 713 N.W.2d 350, 355 (Minn. 2006). The resolution of this appeal based on the plain language of the rules makes it unnecessary to consider these alternative arguments and thus we express no opinion on their merits.

conclusion that L.A.'s appeal was timely in the plain language of the rules. But the majority also concludes that the plain language of the rules does not direct L.A. on which of two forms of service he can rely for the purpose of calculating his appeal deadline, suggesting an ambiguity by silence.[1] There is no ambiguity in my view.

The rules require service on L.A.'s counsel and such service was completed on March 2, 2017. *See* Minn. R. Juv. Prot. P. 10.03, subd. 1 ("If a party is represented by counsel, . . . service *shall be upon* counsel." (emphasis added)).[2] It is undisputed that L.A. was represented by counsel on

March 2, 2017, and the electronic service made on his counsel was complete as of that date.[3] The fact that L.A. was separately served by mail is irrelevant to the appeal period because the court administrator was required to serve L.A.'s counsel and was not required to separately serve L.A.[4]

But even if the multiple forms of service that occurred here created some lack of clarity, as the majority suggests, the purpose of the rules resolves the question, plainly and unambiguously. *See, e.g., Christenson v. Christenson*, 281 Minn. 507, 162 N.W.2d 194, 197 (1968) (explaining

1. Notably, L.A.'s appellate attorney told the court of appeals, when it questioned the timeliness of the appeal, that he recognized before the appeal was filed that "the appeal period had expired under the juvenile court rules."

2. The court of appeals has explained, in the adoption context, that our rules require the court administrator to serve the notice of the filing of the district court's order, rather than one of the parties (as in most civil cases), because a court administrator "is more likely than a practitioner to actually serve a notice of filing and to do so promptly, which tends to ensure that the appeal period actually is commenced . . . in a prompt manner." *In re M.O.*, 838 N.W.2d 577, 582 (Minn. App. 2013) (noting that this procedure "address[es] the same concerns that led to the shortened time for an appeal," specifically, the best interests of children in an expedited resolution of permanency), *rev. denied* (Minn. Oct. 23, 2013).

3. The majority suggests that L.A. is not bound by the service on his counsel because that attorney was discharged at some unknown date before the appeal was filed. But L.A.'s appointed trial counsel was not discharged until the district court proceedings were final—in other words, until the deadline for filing post-trial motions had expired. *See* Minn. R. Juv. Prot. P. 25.06(a) (explaining that appointed counsel is discharged when district court proceedings are "completed"); 45.01, subd. 1 (requiring post-trial motions to be filed "within ten (10) days of the service of notice by the court administrator of the filing of the court's order"). Nor can we assume

that L.A. was uninformed of his appeal rights or the appeal deadline. In addition to the ethical obligation to communicate with a client, the American Bar Association standards of practice for attorneys who represent parents in juvenile protection matters—which are available on the Judicial Branch website—explain that the basic obligations of an attorney representing a parent include reviewing a court order with the parent, "consider[ing] and discuss[ing] the possibility of appeal," and "timely and thoroughly" preparing the appeal paperwork. *Standards of Practice for Attorneys Representing Parents in Abuse and Neglect Cases* 3, 5-6 (Am. Bar Ass'n 2006) (emphasis omitted). Accordingly, there can be no dispute that L.A. had counsel on March 2, when electronic service of the district court's order was made.

4. The record does not provide sufficient insight into the reasons for the multiple forms of service on L.A. and his attorney, but it is clear that this practice created the problem that we face here. Particularly in juvenile protection cases, in which every day of delay is magnified, we cannot endorse case-management practices that depart from the very purpose of electronic service of court notices and orders. *See* Minn. Gen. R. Prac. 14 advisory comm. cmt.—2015 amendments (explaining that "[w]here the notice is substantively important, such as . . . . where the date and time of notice begins the appeal period, *the courts should avoid giving formal notices outside the e-service system*" (emphasis added)).

that we will construe rules of procedure "to effectuate [the] purpose" of the rules). The purpose of the Rules of Juvenile Protection Procedure is to secure permanency for children, "protect and promote the safety and welfare" of children, "provide a just, thorough, speedy, and efficient" resolution, and "reduce unnecessary delays in court proceedings." Minn. R. Juv. Prot. P. 1.02; *see* 1999 advisory comm. cmt. (amended 2014) (explaining that "the overall objective ... is to move expeditiously toward a resolution of the matter in such a way as to secure that which is in the best interests of the child while ensuring due process for all of the parties"). As the title of the rules suggest, the rules govern a child protection system, not a parent protection system. The only "service of notice by the court administrator," Minn. R. Juv. Prot. P. 47.02, subd. 2, that is consistent with the purpose of the rules is the electronic notice that the court administrator was required to and did serve on L.A.'s attorney. *See* Minn. R. Juv. Prot. P. 10.03, subd. 1 ("If a party is represented by counsel, ... service *shall be upon* counsel." (emphasis added)).

The majority fails to address this purpose, turning instead to a general principle that procedural rules are construed to preserve the right to an appeal. We do not consider such construction principles, however, in the absence of ambiguity. *See State v. Hohenwald*, 815 N.W.2d 823, 829 (Minn. 2012) ("When the language of a procedural rule is plain and unambiguous, we must interpret the rule in accordance with its plain language."). Moreover, none of the cases the majority cites in support

of this principle involve a juvenile protection matter where, as here, the overarching objective is an expedient determination of permanency.

Because this is a juvenile protection case, the controlling case is *In re Welfare of J.R.*, 655 N.W.2d 1 (Minn. 2003), and there we declined to take a generous view of the rules governing appeals. A timely appeal was filed, but the appellant failed to serve one party, the guardian ad litem. *Id.* at 2. Arguing that dismissal is a "harsh result," the appellant asked us to excuse a "technical" or "simple failure to follow the rules." *Id.* at 4. We declined the invitation. *Id.* at 4-5. Doing so, we noted, "would be in direct conflict with our own policy ... that these cases in particular need to be expeditiously handled." *Id.* at 5. We stated that the "dismissal of an untimely appeal does not occur in a vacuum" because "[e]ach delay in the termination of a parent's rights equates to a delay in a child's opportunity to have a permanent home and can seriously affect a child's chance for permanent placement." *Id.* We therefore "decline[d] the invitation to elevate the parents' rights at the expense of the child's." *Id.* I would follow the same path here.[5]

Based on the plain language of the rules, the goals and purpose of expedited proceedings in juvenile protection matters, our objectives in implementing electronic case processing, and most importantly, the best interests of the child, I conclude that L.A.'s appeal is untimely and would affirm. This is the only result that holds true to the purpose of our rules and to the spirit of the Children's Justice Initiative.

---

**5.** To the extent that the majority suggests that due process concerns compel the conclusion that L.A.'s appeal was timely, the majority is mistaken. Providing L.A. with counsel on appeal is all that is required for due process. *See*

*Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 31-32, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (declining to hold that due process requires "the appointment of counsel for indigent parents in [all] termination proceedings").

MCKEIG, Justice (dissenting).

I join in the dissent of Chief Justice Gildea.