**In the Matter of the WELFARE OF the CHILDREN of M.L.A. and J.J.K., Parents.**

**No. A06–2018.**

Court of Appeals of Minnesota.

April 17, 2007.

Donald G. Kirchner, Bemidji, MN, for appellant.

Timothy R. Faver, Beltrami County Attorney, Annie P. Claesson–Huseby, Chief Assistant County Attorney, Bemidji, MN, for respondent.

Considered and decided by MINGE, Presiding Judge; STONEBURNER, Judge; and WRIGHT, Judge.

## OPINION

STONEBURNER, Judge.

Appellant challenges the denial of her motions to withdraw her admission and vacate a judgment terminating her parental rights to her two children and for a new trial, arguing that her admission to the allegations in the petition was coerced, that the judgment is invalid under the Indian Child Welfare Act (ICWA), and that the judgment is void for lack of adequate findings. Because there is no evidence in the record that the children involved are Indian children and because the findings are sufficient to support the judgment, we affirm the denial of appellant's motions based on ICWA and insufficient findings. But because the district court failed to conduct an evidentiary hearing to determine whether appellant's admission was coerced, we reverse the district court's denial of appellant's motion to withdraw her admission, vacate the judgment, and remand for an evidentiary hearing on this issue.

## FACTS

A.T.K., born October 10, 2003, and T.J.K., born February 12, 2005, are the children of appellant M.L.A. (mother) and J.J.K. (father). Mother and father are not married and lived together only sporadically. The children were adjudicated in need of protection or services (CHIPS) based on mother's admission to the petition of respondent Beltrami County Human Services (the county) alleging that mother failed to attend to the children's medical and nutritional needs.

The children were placed in the care of their paternal grandparents, who intervened in the CHIPS proceeding without objection from mother. A.T.K. was returned to mother's care approximately ten days after placement, and T.J.K. was returned to her care about two months later. But both children were soon returned to foster care.

More than six months after the children were adjudicated CHIPS, the county filed a termination-of-parental-rights (TPR) petition, asserting four statutory grounds for TPR and based, in part, on medical evidence that while in mother's care, T.J.K. had suffered numerous fractures on his arms, legs, heel, and wrist, consistent with child abuse.

At a pretrial hearing, mother and father, who were represented by separate appointed counsel; the Guardian Ad Litem (GAL); paternal grandparents, who were also represented by counsel; and the county reached an agreement that was placed on the record. Mother and father agreed to involuntary termination of their paren-

tal rights, each admitting to one of the statutory grounds for TPR, and the county agreed to gradually integrate the children into paternal grandparents' home for pre-adoptive placement with the understanding that father and mother's immediate family would have continued contact with the children under supervision of paternal grandparents. The agreement was to be reduced to writing and signed by all parties before being submitted to the district court for issuance of an order and judgment.

On the record, all parties confirmed to the court that this was the agreement. Under oath, mother and father admitted a factual basis for TPR. Specifically, mother, after acknowledging that she had a right to trial, admitted that T.J.K. had suffered approximately nine fractures while in her care, constituting grounds for TPR of both children under Minn.Stat. § 260C.301 subd. 1(b)(6) (2006). The district court accepted the agreement and the parents' admissions, confirmed that the county attorney would reduce the agreement to writing for submission to the district court after it was signed by all parties, set the date and time of the first 90–day review hearing,[1] and, despite the fact that the parties still needed to sign a written agreement, discharged mother's and father's appointed counsel.

Approximately seven weeks after the agreement was placed on the record, mother's former attorney wrote to the district court, stating that mother had refused to sign the agreement drafted by the county attorney. Counsel's letter represented to the district court that mother had authorized counsel to contact the district court "in an effort to have [the court]

issue the order based on what was placed on the record at the [pretrial] hearing, which would dispose of [mother's] need to sign the stipulation." Counsel requested an informal meeting with the district court, attorneys, and GAL to discuss the issue. The letter indicates that it was copied to all counsel and the GAL, but there is no indication that it was copied to mother. The record does not disclose whether a chambers meeting occurred, but the district court issued its TPR order based on the agreement that was placed on the record.

A month after the TPR judgment was entered, mother, represented by a different attorney, moved to vacate the TPR under Minn. R. Juv. Prot. P. 32.06; 45.03(a), (b), (c), (e), and (h); 46.02(a)-(e); and 46.03. Mother sought relief based on her assertion that her admission was coerced and that the children are Indian children subject to the provisions of ICWA.

To support her claim that her admission was coerced, mother alleged in her affidavit that her former attorney told her that if she admitted to the petition, the county would agree to place the children with paternal grandparents for adoption and paternal grandparents would allow supervised contact by father and members of mother's immediate family. Mother further claimed that she was warned that if she went to trial and lost, which her attorney thought was likely based on the evidence that the county proposed to introduce, the county would place the children with strangers and the children would have no further contact with any biological family.

1. The agreement placed on the record specifically referenced the fact that the district court would review the matter every 90 days until adoption was completed as required by Minn. R. Juv. Prot. P. 41.06, subd. 1. Mother was criticized for not challenging TPR at this review hearing, but the TPR judgment terminated her right to participate in the review hearing.

Mother asserts that her former counsel continuously urged her to admit to the petition in the best interests of the children and that even after the hearing, counsel, who had been discharged from representing mother, continued to call mother, telling her that she had to sign the written agreement so that the children would not be placed with strangers.

At a hearing on mother's motions, the county argued primarily that the motions were untimely, but stated that if the district court was going to consider mother's allegations of coercion, the county requested an evidentiary hearing to develop a better understanding of what took place at the pretrial hearing. In response to the district court's question about whether mother's allegations were supported by anything other than her affidavit, father's attorney stated that, although father had not brought a motion or provided an affidavit, he had confirmed that he also was told that if the parents did not agree to involuntary termination of their parental rights, there would be no guarantee that the children would be placed with his parents or that he would ever see them again. The district court denied mother's motions without an evidentiary hearing, and this appeal followed.

## ISSUES

I. Did the district court err by denying mother's motion under ICWA?

II. Is the judgment terminating parental rights void for lack of adequate findings?

III. Were mother's motions to withdraw her admission and for relief from judgment timely and proper?

IV. Did mother present sufficient evidence of coercion to require an evidentiary hearing?

V. Must a party establish a likelihood of success on the merits under Minn. R. Juv. Prot. P. 46.02 to obtain relief from a judgment allegedly based on a coerced admission?

VI. Did the district court abuse its discretion by discharging appointed counsel without cause before the conclusion of the TPR proceeding?

## ANALYSIS

### I. ICWA

■ We first address mother's argument that she is entitled to vacation or invalidation of the TPR judgment because the children may be Indian children subject to the provisions of ICWA.

Any Indian child who is the subject of any action for foster care placement or termination of parental rights under state law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may file with the court and serve upon the parties a Petition to Invalidate such action upon a showing that such action violates the Indian Child Welfare Act, 25 U.S.C. §§ 1911–1914. . . .

Minn. R. Juv. Prot. P. 46.03, subd. 1. "Indian child" is defined in the rules with reference to 25 U.S.C. § 1903(4), and Minn. Stat. § 260.755, subd. 8, as "any unmarried person who is under age eighteen (18) and is either (1) a member of an Indian tribe or (2) is eligible for membership in an Indian tribe." Minn. R. Juv. Prot. P. 2.01(g).

Mother, who made no objection to the statement in the initial CHIPS petition that the children are not Indian children, now asserts that she is at least "1/8th Native American," that father also has "Native American" blood, and that she is in the process of trying to determine which tribe is involved and if the children are eligible for enrollment in such tribe. At

the hearing on mother's motions, father's attorney informed the district court that father does not claim to have any Native American blood.

Because the children are not members of an Indian tribe, and there is no evidence that the children are eligible for membership in any Indian tribe, the district court did not err in concluding that the children are not Indian children as defined by the statutes and in denying mother's motion for relief under rule 46.03 or any other child-protection rule relating to Indian children.[2]

## II. Sufficiency of findings

■ Mother argues that, even if her admission had not been coerced, the findings contained in the district court's order terminating parental rights are insufficient to support termination, rendering the judgment void. We disagree. TPR is appropriate when

a child has experienced egregious harm in the parent's care which is of a nature, duration, or chronicity that indicates a lack of regard for the child's well-being, such that a reasonable person would believe it contrary to the best interest of the child *or of any child* to be in the parent's care.

Minn.Stat. § 260C.301, subd. 1(b)(6) (2006) (emphasis added). The district court found that mother admitted that T.J.K. "suffered nine (9) fractures on his body while in her care" and, based on this admission, concluded that T.J.K. "experi-

enced egregious harm in the parent's care which is of a nature, duration, or chronicity that indicates a lack of regard [for] the child's well-being such that a reasonable person would believe it contrary to the best interest of [T.J.K.] or any child including [A.T.K.] to be in the parent's care." Although minimal, the findings are sufficient, and the judgment is not void for lack of adequate findings.

## III. Bases and timeliness of motions

■ Mother moved for a new trial under Minn. R. Juv. Prot. P. 45.03 and for relief from the TPR order under Minn. R. Juv. Prot. P. 46.02. The county argued to the district court and on appeal that mother's motion for a new trial is untimely and that because there was no trial, the motion was without merit. The district court did not address timeliness, and after reciting on the record what occurred at the pretrial hearing, it concluded that "[n]o grounds exist under R. 45.03 or R. 46.02 of the Rules of Juvenile Protection Procedure to grant a new trial in this matter."

The county's argument about the procedural deficiencies of mother's motion for a new trial is not dispositive. Inexplicably, mother did not base her motion on the specific provision in the rules that "an admission may be withdrawn *at any time* upon a showing that withdrawal is necessary to correct a manifest injustice." Minn. R. Juv. Prot. P. 35.03, subd. 5(a) (emphasis added).[3] Mother's motion is essentially a motion to withdraw her admission to cor-

2. Mother also cites Minn. R. Juv. Prot. P. 32.06, which requires notice to an Indian child's tribe or if the tribe cannot be determined, the Secretary of the Interior, "in any juvenile protection proceeding where the court knows or has reason to know that an Indian child is involved." Because there is no evidence that the children are Indian children as defined in ICWA, this rule has no application to this case.

3. Rule 35.03, subd. 5(a), was first discussed at oral argument on appeal. Mother's counsel questioned whether the rule applies only to CHIPS proceedings, but Minn. R. Juv. Prot. P. 34.03, subd. 3(c), specifically provides that if a court determines that a TPR petition states a prima facie case in support of TPR, "the court shall proceed pursuant to Rule 35."

rect a manifest injustice. Because we conclude that mother's motion is a motion under Rule 35.03, subd. 5(a), and because such a motion can be brought at any time, in the interests of judicial economy, we will address the motion under both Rule 35.03, subd. 5(a), and Rule 46.02. Under the plain language of Rule 35.03, subd. 5(a), the motion is not untimely.

■ Minn. R. Juv. Prot. P. 46.02 provides:

Upon motion and upon such terms as are just, the court may relieve a party or the party's legal representatives from a final order or proceeding, including a default order, and may order a new trial or grant such other relief as may be just for any of the following reasons:

(a) mistake, inadvertence, surprise, or excusable neglect;

(b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial;

(c) fraud (whether denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(d) the judgment is void; or

(e) any other reason justifying relief from the operation of the order.

The motion shall be made within a reasonable time, but in no event shall it be more than ninety (90) days following . . . the filing of the court's order.

Mother's motion under Rule 46.02 was also timely because it was brought within a reasonable amount of time and before the 90–day deadline.

## IV. Coercion and manifest injustice

### a. Standard of review

Generally, appellate courts review a district court's decision on a motion to vacate an order or judgment for an abuse of discretion. *See In re Welfare of T.D.*, 631 N.W.2d 806, 808 (Minn.App.2001) (applying an abuse-of-discretion standard to a decision on a motion to vacate in a TPR proceeding). No published cases have addressed the standard of review of the denial of a motion to withdraw an admission under Rule 35. By analogy to Minn. R.Crim. P. 15.05, which requires a district court to permit a defendant to withdraw a plea of guilty "upon a timely motion and proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice," we conclude that abuse of discretion is the appropriate standard of review for a Rule 35 motion to withdraw an admission to a TPR petition. *See generally Barragan v. State*, 583 N.W.2d 571, 572 (Minn.1998) (applying an abuse-of-discretion standard of review to denial of motion to withdraw a guilty plea).

### b. Showing of coercion

The purpose of the laws relating to . . . termination of parental rights is to ensure that . . . if placement with the parents is not reasonably foreseeable, to secure for the child a safe and permanent placement, preferably with adoptive parents. . . . The paramount consideration in all proceedings for permanent placement of the child . . . is the best interests of the child. . . .

Minn.Stat. § 260C.001, subd. 3(2) (2006). The county, as the responsible social-service agency, is required by statute to recommend to the district court only such permanent placement options as are in the best interests of the children involved in a TPR. Id. And the role of a GAL in a TPR proceeding is to advocate for the best interests of a child. Minn. R. Juv. Prot. P. 26.01, subds. 1, 2 (providing that GALs appointed by the district court are to "advocate for the best interests of the child").

Because the county and GAL ultimately recommended, and the district court ap-

proved, pre-adoptive placement of the children with paternal grandparents with provision for continued contact with father and other biological relatives, we can only conclude that such placement was considered by the county and the GAL to be in the best interests of the children.

Although we have not had prior occasion to address what constitutes "manifest injustice" under Rule 35, we conclude that manifest injustice certainly includes coercing a parent to admit to a TPR petition by use of a threat that not admitting to the petition would result in a placement of the children contrary to their best interests. *See State v. Kaiser*, 469 N.W.2d 316, 319 (Minn.1991) (recognizing, in the context of criminal law, that a manifest injustice occurs when a defendant is coerced into pleading guilty); *cf. Lynumn v. Ill.*, 372 U.S. 528, 533–34, 537–38, 83 S.Ct. 917, 920, 922, 9 L.Ed.2d 922 (1963) (reversing a guilty judgment and refusing to apply the harmless-error doctrine when a confession was coerced by police officers, who threatened the defendant that the state would take away her children and her children's state-funded aid.)

### c. Need for evidentiary hearing

■ In the context of criminal law, the supreme court has held that "whether or not a [defendant's plea] was coerced cannot be decided without the trial court first making factual findings relating to the alleged coercion." *Kaiser*, 469 N.W.2d at 319. The supreme court also held in *Kaiser* that conclusory affidavits alone are not enough to establish coercion. Id. The logic of this holding equally applies to a motion to withdraw an admission to a TPR. We conclude that the district court should have held an evidentiary hearing, as recommended by the county, to determine whether, in fact, the representations mother's affidavit alleges were made, and if so,

by whom they were made, and what role the representations played in mother's admission to the TPR petition. In short, it is necessary for the district court to determine whether, in fact, mother's admission was coerced.

### V. Relief under Rule 46.02

■ Although we have concluded that mother is entitled to an evidentiary hearing under the provisions of Rule 35.03, subd. 5(a), because mother brought a timely motion under Rule 46.02, we will address the issues raised under that rule. The county correctly notes that Rule 46.02 is very similar to Minn. R. Civ. P. 60.02, and urges us to import the requirements for obtaining relief from a civil judgment under Rule 60.02 to the juvenile-protection-procedure rules.

■ In civil actions, to obtain relief under Rule 60.02, a party "must establish (1) a reasonable case on the merits; (2) a reasonable excuse for the failure to act; (3) action with due diligence after entry of judgment; and (4) lack of prejudice to the opposing party." *Reid v. Strodtman*, 631 N.W.2d 414, 419 (Minn.App.2001) (citing *Finden v. Klaas*, 268 Minn. 268, 271, 128 N.W.2d 748, 750 (1964)). But satisfying these factors is not always a prerequisite to obtaining relief under Minn. R. Civ. P. 60.02. In *Lyon Dev. Corp. v. Ricke's, Inc.*, 296 Minn. 75, 84–85, 207 N.W.2d 273, 279 (1973), the supreme court declined to apply the four-factor test when there were "procedural defects of such consequence that ... the mere showing of that failure in and of itself is grounds to set aside [a] default judgment."

Whatever the merit of requiring, in some cases, that the factors developed under Minn. R. Civ. P. 60.02 be met before a party can obtain relief under Minn. R. Juv. Prot. P. 46.02, we conclude that if a party establishes that the judgment is based on a

coerced admission, that, in and of itself, is grounds to provide relief from judgment.

## VI. Discharge of counsel

 Although it was not raised as a separate issue on appeal, mother's argument to the district court and on appeal repeatedly emphasized how she was disadvantaged by the discharge of her appointed counsel before the conclusion of the matter in district court. The record shows that mother's former counsel continued to contact mother and the district court after she was discharged from representing mother, but it is not clear that counsel was even purporting to represent mother in those contacts. Counsel did not make any motions, and nothing in the record suggests that counsel assisted mother in any way to challenge the agreement or withdraw her admission to the TPR prior to the issuance of the judgment. Prompt and appropriate resolution of this matter was, at least in part, hampered by the district court's discharge of mother's counsel prior to the conclusion of the district court's involvement in the TPR. We conclude that the district court abused its discretion by discharging mother's appointed counsel, without cause, before the conclusion of the action in district court.

## DECISION

Because the record does not show that Indian children are involved in this action, the district court did not err in denying mother's motions for relief from judgment under ICWA. The district court's judgment is not void for lack of adequate findings on the statutory basis for a TPR. But the district court abused its discretion by discharging mother's appointed counsel, without cause, before the TPR proceeding was concluded in district court, and because mother has presented evidence that her admission to the TPR peti-

tion was coerced, we reverse the district court's denial of her motions to withdraw her admission and for relief from the TPR judgment and remand for an evidentiary hearing to determine whether mother's admission was coerced.

**Affirmed in part, reversed in part, and remanded.**