STATE OF MINNESOTA

IN SUPREME COURT

A24-1673

Court of Appeals

Procaccini, J.
Took no part, Gaïtas, J.

In the Matter of the Welfare of the
Child of: B.D.D. and D.A.A., Parents.

Filed: September 17, 2025
Office of Appellate Courts

_____

Christopher D. Reisdorfer, Nelson Oyen Torvik P.L.L.P., Montevideo, Minnesota, for appellant D.A.A.

Michelle Eldien, Otter Tail County Attorney, Kathleen J. Schur, Assistant Otter Tail County Attorney, Fergus Falls, Minnesota, for respondent Otter Tail County Department of Human Services.

_____

S Y L L A B U S

1.     Under Minnesota Rule of Juvenile Protection Procedure 56.03, subdivision 5(b), a person who entered an admission to a petition for termination of parental rights may file a motion to withdraw their admission at any time upon a showing that withdrawal is necessary to correct a manifest injustice.

2.     When a person files a motion to withdraw their admission to a petition for termination of parental rights under Minnesota Rule of Juvenile Protection Procedure 56.03, subdivision 5(b), the district court must determine whether the motion

1

makes a prima facie showing that a manifest injustice has occurred and that withdrawal is necessary to correct the injustice. If the district court determines that the motion makes such a showing, then the district court must hold an evidentiary hearing.

Reversed and remanded.

O P I N I O N

PROCACCINI, Justice.

In this case, we clarify the timeframe in which a person who has entered an admission to a petition for termination of their parental rights may file a motion to withdraw that admission to correct a manifest injustice. In 2022, respondent Otter Tail County Department of Human Services (the county) filed a petition for termination of the parental rights of appellant D.A.A. to his child, T.A.D. D.A.A. consented to the voluntary termination of his parental rights and entered an admission to the county's petition. In 2023, based in part on the admission, the district court terminated D.A.A.'s parental rights. A year and a half later, D.A.A. filed a motion to withdraw his admission under Minnesota Rule of Juvenile Protection Procedure 56.03, subdivision 5(b), which provides that "[a]n admission may be withdrawn upon filing a motion with the court . . . at any time, upon a showing that withdrawal is necessary to correct a manifest injustice." The district court struck the motion without addressing its merits.

We conclude that, under Rule 56.03, subdivision 5(b), a person may file a motion to withdraw their admission to a petition for termination of parental rights at *any* time in order to correct a manifest injustice. We further conclude that, upon the filing of such a motion, the district court must determine whether the motion makes a prima facie showing

2

that a withdrawal is necessary to correct a manifest injustice. If the motion does make a prima facie showing, then the district court must hold an evidentiary hearing. Because the district court struck D.A.A.'s motion without first considering whether the motion made a prima facie showing that withdrawal is necessary to correct a manifest injustice, remand to the district court is required.

**FACTS**

In October 2022, the county filed a petition in the district court for termination of D.A.A.'s parental rights to his child, T.A.D., based on several statutory grounds. In February 2023, D.A.A. filed a document captioned "Affidavit of Consent to Voluntarily Terminate Parental Rights." In the affidavit, D.A.A. consented to termination of his parental rights to T.A.D. under Minnesota Statutes section 260C.301, subdivision 1(a) (2024), which allows a court to terminate parental rights "with the written consent of a parent who for good cause desires to terminate parental rights."

About a week after D.A.A. filed the affidavit, the district court held an admit/deny hearing in which D.A.A. entered an admission to the petition for termination of his parental rights. *See* Minn. R. Juv. Prot. P. 55.02 ("An admit/deny hearing shall be held not less than 10 days after service of the summons and petition upon the parties."). During the admit/deny hearing, D.A.A. confirmed that no one had "threatened or pressured [him] into consenting to a termination of parental rights[,]" that he believed termination of his parental rights to T.A.D. was in the child's best interests, and that he understood that the termination of his parental rights would be final.

On March 17, 2023, the district court terminated D.A.A.'s parental rights to T.A.D. under section 260C.301, subdivision 1(a). The district court concluded that D.A.A.'s admission and the exhibits presented during the hearing provided a sufficient factual basis for finding that D.A.A.'s parental rights should be terminated and that termination was in the best interests of the child. D.A.A. did not challenge these conclusions in any post-trial motions.

Two weeks later, D.A.A. appealed the order terminating his parental rights to T.A.D. In his statement of the case, D.A.A. identified "subject matter jurisdiction" as the issue to be raised on appeal. D.A.A. subsequently filed a notice of voluntary dismissal, and the court of appeals dismissed the appeal in April 2023.

D.A.A. filed a motion to reinstate his direct appeal in January 2024. The court of appeals accepted the motion, reinstated the appeal, and limited the scope of the appeal to whether the district court had subject matter jurisdiction over the termination proceedings. D.A.A. moved to amend the scope of the appeal beyond the jurisdictional question. The court of appeals denied D.A.A.'s motion and affirmed the termination of his parental rights to T.A.D. *In re Welfare of Child of B.D.D. and D.A.A.*, No. A23-0489, 2024 WL 3934824, at *8 (Minn. App. Aug. 26, 2024), *rev. denied* (Minn. Oct. 4, 2024). D.A.A. filed a petition for further review, which we denied. Per the Rules of Juvenile Protection Procedure, the termination of D.A.A.'s parental rights became final in June 2023, after the time to challenge the termination order under the rules had passed. *See* Minn. R. Juv. Prot. P. 21.01, subd. 1 (allowing a post-trial motion to be filed within 10 days of a finding on a petition); Minn. R. Juv. Prot. P. 22.02 (allowing a motion for relief to be filed within

4

"90 days following the service of notice by the court administrator of the filing of the court's order"); Minn. R. Juv. Prot. P. 23.02, subd. 2 (allowing an appeal to be filed within 20 days of a final order).

On October 2, 2024, more than a year and a half after his parental rights to T.A.D. were terminated, D.A.A. filed a motion to withdraw his admission to the termination petition. D.A.A. sought to withdraw his admission under Minnesota Rule of Juvenile Protection Procedure 56.03, subdivision 5(b), which states: "An admission may be withdrawn upon filing a motion with the court . . . at any time, upon a showing that withdrawal is necessary to correct a manifest injustice." In his motion and an accompanying affidavit, D.A.A. asserted that he should be allowed to withdraw his admission because it "was obtained through a fraud committed by [the county attorney] and undue influence and was entered into under duress."

In a brief order, the district court determined that D.A.A. did not have standing to file a motion to withdraw his admission because he was no longer a party to the termination proceedings, as his parental rights to T.A.D. had been terminated and the time to challenge the termination order had passed. The district court then struck the motion without further consideration.

D.A.A. appealed. The court of appeals dismissed the appeal in a special term order. Like the district court, the court of appeals concluded that D.A.A. lacked standing to file a motion to withdraw his admission because the termination of his parental rights had become final.

5

D.A.A. filed a petition for further review, seeking review of several issues. We granted review only of the issues relating to the timeframe for withdrawing an admission to a petition for termination of parental rights under Rule 56.03, subdivision 5(b).[1]

**ANALYSIS**

We must consider two issues on appeal. First, we address whether D.A.A. was allowed to file a motion to withdraw his admission to the petition for termination of parental rights under Minnesota Rule of Juvenile Protection Procedure 56.03, subdivision 5(b), after the termination of his parental rights had become final. Second, we assess whether D.A.A. was entitled to an evidentiary hearing on his motion. These issues require us to interpret the Rules of Juvenile Protection Procedure, which we consider de novo. *In re Welfare of Child of R.K.*, 901 N.W.2d 156, 159 (Minn. 2017).

I.

We first consider whether D.A.A. was allowed to file a motion to withdraw his admission to the petition for termination of his parental rights under Minnesota Rule of Juvenile Protection Procedure 56.03, subdivision 5(b), after the termination of his parental rights had become final.

In its order dismissing D.A.A.'s appeal, the court of appeals concluded that D.A.A. lacked standing to file a motion to withdraw his admission under Rule 56.03, subdivision 5(b), because the termination of his parental rights to T.A.D. had become final.

---

[1]     We declined to consider whether a person whose parental rights have been terminated may raise an ineffective-assistance-of-appellate-counsel claim through a motion to reinstate a direct appeal after the appeal is final.

The court of appeals relied on Minnesota Statutes section 260C.317, subdivision 1 (2024), which states that a person whose parental rights have been terminated has "no standing to appear at any further legal proceeding concerning the child."[2]

Before this court, D.A.A. argues that he had standing to file the motion to withdraw his admission under Rule 56.03, subdivision 5(b), which allows a person to file such a motion "at any time, upon a showing that withdrawal is necessary to correct a manifest injustice." D.A.A. further contends that, to the extent that Rule 56.03, subdivision 5(b), conflicts with section 260C.317, subdivision 1, the rule supersedes the statute. The county disagrees, arguing that "neither the statutory provisions nor the rules confer standing upon a terminated parent to come back almost two years after the termination occurred and withdraw their voluntary admission."

Although the parties frame their arguments in terms of legal "standing," this characterization is misguided. "Standing" is a legal term of art that reflects the right of a person or entity to bring a cause of action in a court of law. *See In re Custody of D.T.R.*, 796 N.W.2d 509, 512–13 (Minn. 2011); *see also Standing*, *Black's Law Dictionary* 1700 (12th ed. 2024) ("A party's right to make a legal claim or seek judicial enforcement of a

---

[2] Although the court of appeals dismissed the appeal because it concluded that the district court's order striking D.A.A.'s motion was not appealable, the reasoning of the court of appeals is intrinsically intertwined with the underlying merits raised in that appeal as to the appropriateness of the district court's order. In other words, our review of the conclusion that "[a]ppellant lacks standing to file a motion challenging the order terminating parental rights, which is now final," determines both whether the district court's order affected appellant's substantial rights so as to be an appealable order under Minnesota Rule of Juvenile Protection Procedure 23.02, subdivision 1, and whether the district court's order was improper. Thus, our decision here resolves both the question of appellate jurisdiction and the merits of the appeal.

duty or right based on the party's having a sufficient interest in a justiciable controversy."). A person has standing to file a lawsuit if they have suffered an injury in fact or if they are "the beneficiary of some legislative enactment granting standing." *D.T.R.*, 796 N.W.2d at 512 (citation omitted) (internal quotation marks omitted). Both the juvenile protection statute and the Rules of Juvenile Protection Procedure recognize that a person has the right to participate in proceedings related to the termination of their parental rights. *See* Minn. Stat. § 260C.307, subd. 3 (2024) (requiring notice to parents upon filing of a petition for termination of parental rights); Minn. R. Juv. Prot. P. 32.01, subd. 3(a) (identifying parents as parties to termination of parental rights proceedings). Section 260C.317, subdivision 1, implicitly acknowledges this right by purporting to limit *further* participation by a person whose parental rights have been terminated in future proceedings involving the child. So the relevant question here is not *whether* a person has standing to participate in a proceeding related to the termination of their parental rights—they clearly do. Rather, the relevant question is one of timing: *When* may a person bring a motion to withdraw an admission to a petition for termination of parental rights to correct a manifest injustice? *See* Minn. R. Juv. Prot. P. 56.03, subd. 5(b).

This timing question is fundamentally procedural. And this court is responsible for regulating matters of trial and appellate procedure. *In re Welfare of J.R., Jr.*, 655 N.W.2d 1, 3 (Minn. 2003) ("We have consistently held that the supreme court has the primary responsibility under the separation of powers doctrine to regulate matters of trial and appellate procedure."); *see also Wells Fargo Bank, Nat'l Ass'n v. True Gravity Ventures, LLC*, 23 N.W.3d 837, 844–45 (Minn. 2025) (explaining that the Legislature was divested

of authority to regulate court proceedings in a 1956 constitutional amendment and emphasizing "our inherent authority to govern court procedures"). Our procedural rules control here. *See J.R., Jr.*, 655 N.W.2d at 3.

Having established the correct framing for this case, we now consider when a person may file a motion to withdraw their admission to a petition for the termination of their parental rights to correct a manifest injustice under Rule 56.03, subdivision 5(b). To answer this question, we turn to "the plain language of the rule and its purpose." *R.K.*, 901 N.W.2d at 160 (citation omitted) (internal quotation marks omitted). If we determine that the plain language of a rule is unambiguous—susceptible to only one reasonable interpretation—we must follow it. *Id.*

As stated above, Rule 56.03, subdivision 5(b), provides: "An admission may be withdrawn upon filing a motion with the court . . . *at any time*, upon a showing that withdrawal is necessary to correct a manifest injustice." (Emphasis added.) We have explained that using the word "any" demonstrates an "intent to be inclusive, not restrictive." *In re PERA Police & Fire Plan Line of Duty Disability Benefits of Brittain*, 724 N.W.2d 512, 519 (Minn. 2006). When used in the affirmative, "any" means "every" or "all." Bryan A. Garner, *The Oxford Dictionary of American Usage and Style* 24 (2000); *see also PERA*, 724 N.W.2d at 519. Because "any" is all-encompassing, we give the word broad application, "regardless of whether we consider the result reasonable." *Hyatt v. Anoka Police Dep't*, 691 N.W.2d 824, 826 (Minn. 2005); *see also Olson v. Ford Motor Co.*, 558 N.W.2d 491, 494 (Minn. 1997) (statute barring seat belt evidence in "any litigation involving personal injuries or property damage" barred evidence in an action

9

alleging that the seat belt was defective (citation omitted) (internal quotation marks omitted)); *Reynolds v. State*, 888 N.W.2d 125, 133–34 (Minn. 2016) (the two-year statute of limitations for a petition for postconviction relief does not apply to a motion under Minnesota Rule of Criminal Procedure 27.03, subdivision 9, which authorizes a court to correct an illegal sentence at "any time"). Accordingly, the plain meaning of "any" requires us to interpret "at any time" to mean "at *any* time."

The canon against surplusage compels the same interpretation. Under the canon against surplusage, we give each word or phrase in a statute or rule a distinct, rather than an identical, meaning. *See State v. Thonesavanh*, 904 N.W.2d 432, 437 (Minn. 2017). We likewise "attempt to avoid interpretations that would render a word or phrase superfluous, void, or insignificant," to ensure that each word or phrase in a statute or rule is given effect. *State v. Thompson*, 950 N.W.2d 65, 69 (Minn. 2020). If we were to interpret "at any time" to include a time limit, we would have to read words into the rule, which would render the "at any time" language superfluous. For instance, at oral argument, the county argued that the 90-day time limit for a motion for relief from a final order under Minnesota Rule of Juvenile Protection Procedure 22.02 should serve as the time limit for a motion to withdraw under Rule 56.03, subdivision 5(b). But interpreting "at any time" to mean "at any time *within 90 days*" would require us to add "within 90 days" to the rule. Additionally, reading a 90-day time limit into Rule 56.03, subdivision 5(b), would render "at any time" superfluous. Because "at any time within 90 days" means the same thing as "within 90 days," reading a time limit into Rule 56.03, subdivision 5(b), would also risk excising "at any time" from the rule. For these reasons, the canon against surplusage instructs us to

read "at any time" to mean "at *any* time," without regard to other time limits set forth in the rules.

The canon of *expressio unius est exclusio alterius*, which means that "the expression of one thing is the exclusion of another," also supports this interpretation. *State v. Caldwell*, 803 N.W.2d 373, 383 (Minn. 2011). This canon "generally reflects an inference that any omissions in a [law] are intentional." *Id.* Under the Rules of Juvenile Protection Procedure, there are three ways to seek relief from either a finding on a petition for termination of parental rights or a final order terminating parental rights. These avenues for relief are set out in Minnesota Rules of Juvenile Protection Procedure 21, 22, and 23, and each of them has a specific deadline for seeking relief. *See* Minn. R. Juv. Prot. Proc. 21, subd. 1 (setting a 10-day deadline for post-trial motions); Minn. R. Juv. Prot. Proc. 22.02 (setting a 90-day deadline for motions for relief from a final order); Minn. R. Juv. Prot. Proc. 23.02, subd. 2 (setting a 20-day deadline for an appeal from a final order). The time limits for relief set out in Rules 21, 22, and 23, as well as the absence of any limit in Rule 56.03, subdivision 5(b), suggest that no time limit should be read into the latter. *See Caldwell*, 803 N.W.2d at 383.

The county argues that interpreting "at any time" to truly mean "at *any* time" is inconsistent with the purpose of the Rules of Juvenile Protection Procedure, which aim to prioritize the best interests of the child in part by providing finality in termination decisions. *See R.K.*, 901 N.W.2d at 160 (explaining that we interpret a procedural rule based on its plain language and purpose). But we are unconvinced that interpreting "at any time" to mean "at *any* time" will significantly undermine the child's interest in finality. Rule 56.03,

11

subdivision 5(b), allows for the withdrawal of an admission "at any time . . . *to correct a manifest injustice*." (Emphasis added.) As we have acknowledged in the criminal plea-withdrawal context, a manifest-injustice standard applies in only limited circumstances. *See, e.g.*, *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007) (explaining that "manifest injustice exists where a guilty plea is invalid" and that this standard is more demanding than the fair-and-just standard); *State v. Wolske*, 160 N.W.2d 146, 151 (Minn. 1968) (explaining that a manifest injustice occurs when a defendant is "induced" to plead guilty "by a form of official deceit or by means which are at least grossly unfair"); *see also In re Welfare of Child. of M.L.A.*, 730 N.W.2d 54, 61 (Minn. App. 2007) (explaining that a "manifest injustice certainly includes coercing a parent to admit to a [termination] petition by use of a threat that not admitting to the petition would result in a placement of the children contrary to their best interests"). Because this standard is very difficult to meet, most orders terminating the parental rights to a child will remain final. Only in the rare case where a manifest injustice has occurred could Rule 56.03, subdivision 5(b), threaten to undermine the finality of a termination order. In other words, we allow for the withdrawal of an admission under Rule 56.03, subdivision 5(b), only in narrow circumstances to *ensure* finality in most cases, not to undermine it.

We also disagree that our interpretation is inconsistent with prioritizing the best interests of the child, which are "paramount" in juvenile protection proceedings. *In re Welfare of M.D.O.*, 462 N.W.2d 370, 375 (Minn. 1995). We have recognized that "few interests [are] more fundamental than a parent's relationship with [their] child and few government acts [are] more significant than terminating that relationship." *In re Welfare*

*of Child. of G.A.H.*, 998 N.W.2d 222, 235 (Minn. 2023). "Accordingly, the parent has a 'commanding' constitutional interest in an accurate and just termination decision." *Id.* (quoting *Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 27 (1981)). Allowing a person to withdraw their admission at any time to correct a manifest injustice serves the dual purpose of protecting the parent's fundamental right to the care, custody, and control of their child, on the one hand, and promoting the best interests of the child, on the other, by ensuring that neither the parent nor the child is erroneously deprived of the parent-child relationship. *See id.*

For these reasons, we conclude that Rule 56.03, subdivision 5(b), plainly and unambiguously allows a person to file a motion to withdraw their admission to a petition for termination of parental rights to correct a manifest injustice at *any* time, without regard to the other time limits set out in the Rules of Juvenile Protection Procedure. Accordingly, D.A.A. had the right to file a motion to withdraw his admission under Rule 56.03, subdivision 5(b), even though the time to challenge the termination order had passed.[3] The court of appeals therefore erred by dismissing D.A.A.'s appeal for lack of standing.

---

[3]     We acknowledge that the indefinite period for withdrawal currently contained in Rule 56.03, subdivision 5(b), may not strike the optimal policy balance between the child's right to finality and permanency in termination proceedings and the parent's right to challenge a manifestly unjust admission. But finetuning our rule deadlines based on policy considerations is better left to our rulemaking process. *See Wells Fargo*, 23 N.W.3d at 846. Accordingly, we decline to resolve this policy question here.

## II.

Having clarified that D.A.A.'s motion was not time-barred under Rule 56.03, subdivision 5(b), we now turn to the issue of whether D.A.A. was entitled to an evidentiary hearing on his motion under the rule.

D.A.A. argues that the district court erred by striking his motion without an evidentiary hearing. D.A.A. relies primarily on *M.L.A.*, where the court of appeals concluded that a mother who filed a motion to withdraw her admission under Rule 56.03, subdivision 5(b), was entitled to an evidentiary hearing to determine whether her admission was coerced. 730 N.W.2d at 61. D.A.A. extrapolates from this conclusion the general rule that, whenever a person moves to withdraw their admission to a petition for termination of parental rights to correct a manifest injustice, the district court must hold an evidentiary hearing "to determine if the representations made in a movant's affidavit to withdraw an admission are substantiated." The county asserts that *M.L.A.* is distinguishable because the motion to withdraw in that case was filed "within 90 days of the final order terminating parental rights," which is "vast[ly] differen[t]" from the circumstances here.

We agree with D.A.A. that the district court erred when it summarily struck his motion without further consideration. But to say that the court was required to do more than it did here does not necessarily mean that an evidentiary hearing is automatically required whenever a person files a motion to withdraw an admission to correct a manifest injustice under Rule 56.03, subdivision 5(b). We begin by considering the language of the rule and its purpose.

14

As stated above, Rule 56.03, subdivision 5(b), allows a person to withdraw their admission to a petition for termination of parental rights "at any time, upon a *showing* that withdrawal is necessary to correct a manifest injustice." (Emphasis added.) A showing may be made during an evidentiary hearing. But "[d]ue process does not always require a full evidentiary hearing." *State v. LeDoux*, 770 N.W.2d 504, 514 (Minn. 2009) (citing *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976)). Indeed, we have held that an evidentiary hearing is not required to resolve a motion to modify custody. *See Goldman v. Greenwood*, 748 N.W.2d 279, 284 (Minn. 2008) (explaining that an evidentiary hearing is required "only if the party seeking to modify a custody order makes a prima facie case for modification"). Instead, a district court may resolve a motion to modify custody based on affidavits submitted by the parties. *Morey v. Peppin*, 375 N.W.2d 19, 25 (Minn. 1985); *see also Silbaugh v. Silbaugh*, 543 N.W.2d 639, 641 (Minn. 1996) (resolving a motion to modify custody based on the parties' affidavits). A person may be able to make a "showing" without an evidentiary hearing when, for example, evidence proffered is undisputed and entitles them to relief. Likewise, a person may conclusively *fail* to make a "showing" if it is not possible to construe their proffer in a manner that would entitle them to relief. In other words, whether an evidentiary hearing is required is fact dependent; a person who files a motion under the rule is not entitled to one unless their proffer, if true, would entitle them to relief.

We acknowledge that we have reached a somewhat different conclusion in the criminal plea-withdrawal context. Under the Minnesota Rules of Criminal Procedure, a criminal defendant may file a motion to withdraw a guilty plea to correct a manifest

15

injustice. Minn. R. Crim. P. 15.05, subd. 1. In *State v. Kaiser*, we concluded that the district court was required to hold an evidentiary hearing on defendant's motion to withdraw his guilty plea because he alleged that he was coerced into pleading guilty. 469 N.W.2d 316, 319 (Minn. 1991). We explained that "whether or not defendant was coerced cannot be decided without the trial court first making factual findings relating to the alleged coercion." *Id.* The court of appeals extended this logic to the termination-of-parental-rights context in *M.L.A.*, concluding that the district court was required to hold an evidentiary hearing on the mother's motion to withdraw her admission under Rule 56.03, subdivision 5(b), because she alleged that her admission was coerced. 730 N.W.2d at 61. D.A.A. urges us to adopt the reasoning from *M.L.A.* and apply it here. We decline to do so.

The purpose of the Rules of Juvenile Protection Procedure persuades us that a motion to withdraw an admission under Rule 56.03, subdivision 5(b), should be treated differently than a motion to withdraw a guilty plea under Minnesota Rule of Criminal Procedure 15.05, subdivision 1. *See R.K.*, 901 N.W.2d at 160 (explaining that we interpret a court rule based on its plain language and purpose). Rule 56.03, subdivision 5(b), serves the dual purposes of protecting the parent's right to the parent-child relationship and promoting the child's best interests by ensuring the child was not wrongly deprived of that relationship. But we have also emphasized—here and in previous opinions—that we will not allow children "to linger in uncertainty." *Id.* at 162. This is because "prolonged uncertainty for children . . . can seriously and permanently damage a child's development of trust and security." *J.R., Jr.*, 655 N.W.2d at 5 (citation omitted) (internal quotation

16

marks omitted). So, "[w]hile we recognize and support due process rights of all parties, we decline the invitation to elevate the parents' rights at the expense of the child's." *Id.* Given the child's unique and urgent interest in finality in termination of parental rights proceedings, we conclude that the court must exercise additional caution in deciding whether to grant an evidentiary hearing on a motion to withdraw an admission under Rule 56.03, subdivision 5(b).

For these reasons, we hold that a district court is required to hold an evidentiary hearing on a motion to withdraw an admission under Rule 56.03, subdivision 5(b), *only if* the movant makes a prima facie showing that a manifest injustice has occurred and that a withdrawal is necessary to correct it. *Cf. Goldman*, 748 N.W.2d at 286 (upholding the district court's decision to deny a motion to modify custody without an evidentiary hearing because the movant did not present a prima facie case that modification was warranted). This showing may be made through affidavits and evidence that, if true, would establish that a manifest injustice has occurred and withdrawal is necessary. *Cf. Morey*, 375 N.W.2d at 25 (explaining that an evidentiary hearing on a motion to modify custody must be held "if, by affidavits submitted in support of the motion, . . . the movant makes a prima facie showing of circumstances justifying modification. . . ."). Bare or unsupported allegations are insufficient to make a prima facie showing. *See Silbaugh*, 543 N.W.2d at 642 (concluding that a parent's bare and unsupported allegations were insufficient to warrant an evidentiary hearing on his motion to modify custody); *DeCook v. Olmsted Med. Ctr., Inc.*, 875 N.W.2d 263, 276 n.5 (Minn. 2016) (Dietzen, J., concurring in part and dissenting in part) ("A conclusory, unsupported assertion is neither a well-pleaded fact nor is it

17

evidence and, therefore, it cannot make out a prima facie case."). If a movant fails to make a prima facie showing that a manifest injustice has occurred or that a withdrawal is necessary to correct such an injustice, the district court may dismiss the motion without an evidentiary hearing.

Without the benefit of this opinion, the district court understandably struck D.A.A.'s motion under Rule 56.03, subdivision 5(b), without considering whether he had made the required prima facie showing. We therefore remand to the district court for further proceedings consistent with this opinion.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals and remand to the district court for further proceedings consistent with this opinion.

Reversed and remanded.


GAÏTAS, J., took no part in the consideration or decision of this case.